**In re SAN JUAN DUPONT PLAZA HOTEL FIRE LITIGATION**

**PLAINTIFFS' STEERING COMMITTEE, Appellant,**

v.

**TOURISM COMPANY OF PUERTO RICO, Appellee.**

No. 89–1552.

United States Court of Appeals, First Circuit.

Heard Oct. 6, 1989.

Decided Nov. 8, 1989.

See also, 1st Cir., 859 F.2d 1007.

John E. Mudd, San Juan, P.R., with whom Peter Berkowitz, Alvaro Calderon, Hato Rey, P.R., Stanley M. Chesley, Cincinnati, Ohio, John Cummings, III, New Orleans, La., Wendell H. Gauthier, Metairie, La., David C. Indiano, San Juan, P.R., Will Kemp, Harvey B. Nachman, Santurce, P.R., Jorge Ortiz Brunet, Hato Rey, P.R., Jorge M. Suro–Ballester, Santurce, P.R., and Francisco M. Troncoso, Old San Juan, P.R., were on brief, for appellant.

Manuel Alvarado with whom Juan A. Moldes and Saldana, Rey, Moran & Alvarado, Hato Rey, P.R., were on brief, for appellee.

Before CAMPBELL, Chief Judge, TIMBERS,* Senior Circuit Judge, and BREYER, Circuit Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from the district court's dismissal of claims for damages against the Tourism Company of Puerto Rico. The issue on appeal is whether the district court correctly held that the Puerto Rico Tourism Company is an arm of the Commonwealth of Puerto Rico and, therefore, immune from suit under the Eleventh Amendment. Finding that the Tourism Company comes

* Of the Second Circuit, sitting by designation.

within the protective umbrella of the Eleventh Amendment, we affirm.

This case arose out of the December 31, 1986 fire in the San Juan Dupont Plaza Hotel in San Juan, Puerto Rico, which resulted in ninety-six deaths, as well as severe personal injuries and property damage. In the aftermath of the fire, over two thousand plaintiffs brought suits against close to two hundred defendants, among them the appellee Tourism Company of Puerto Rico ("Tourism Company"). The suits, many of which were brought in or removed to federal court, were based on various theories of liability. They were consolidated in the United States District Court for the District of Puerto Rico and the appellant Plaintiffs' Steering Committee ("PSC"), a team of trial attorneys, was assigned as representative of the plaintiffs.

On December 1, 1987, the Tourism Company, which is a public corporation created by Puerto Rico law in order to "promote, develop, and improve the tourist industry,"[1] moved for dismissal. The Tourism Company maintained that under the Eleventh Amendment it is immune from suit in federal court. On February 3, 1989, after extensive discovery on the issue of whether the Tourism Company was an arm of the Commonwealth, the district court dismissed all claims against the Tourism Company on Eleventh Amendment grounds, and entered a final judgment pursuant to Federal Rule 54(b). On March 10, 1989, the court denied PSC's motion to alter or amend the judgment. This appeal followed.

## I. *The Timeliness of this Appeal*

■ The Tourism Company argues that this court lacks jurisdiction over this appeal, because the district court erred in extending PSC's time for appealing. PSC's initial notice of appeal was timely filed on March 15, 1989. However, this first notice of appeal simply stated that "all plaintiffs, through the Plaintiffs' Steering Committee hearby appeal" and did not name or other-wise specify the particular appellants. There were over 2,000 original plaintiffs.

Federal Rule of Appellate Procedure 3(c) provides that a notice of appeal "shall specify the party or parties taking the appeal." The Supreme Court has held this requirement to be jurisdictional and has construed it strictly. *See Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988). Following *Torres*, this court held that the phrase, "All plaintiffs appeal," did not satisfy Rule 3(c)'s specificity requirement in a situation in which not all of the original eight plaintiffs were appealing, and the notice was unclear as to which plaintiffs were actually appealing. *See Santos–Martinez v. Soto–Santiago*, 863 F.2d 174 (1st Cir.1988).

On April 19, 1989, this court entered an order directing PSC to show cause why its appeal should not be dismissed in light of its failure to specify the appellants. We recommended that PSC move in the district court for an extension of time under Appellate Rule 4(a)(5).[2] PSC followed this advice. In its motion in the district court, PSC explained that it had neglected to list all plaintiffs, because it thought it would be wasteful and unnecessary to do so in light of what PSC said had been the earlier practice of not listing all plaintiffs individually on appeals in this litigation. The district court granted the motion, ruling that the failure to list all plaintiffs was due to PSC's excusable neglect, "because of their [sic] understanding of their appointment and previous experience with appeals as asserted in their motion." On May 22, PSC filed its second notice of appeal, this time with a twenty-nine page list containing the names of all plaintiffs.

The Tourism Company now argues that the extension of time should not have been granted. It contends that an extension of time under Rule 4(a)(5) can be granted only where the failure to file timely notice of appeal resulted from acts of third parties (other than appellant's counsel) or an ex-

---

**1.** 23 L.P.R.A. § 671d.

**2.** The Rule provides that "The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of

appeal upon motion filed not later than 30 days after the expiration of the time prescribed by this Rule 4(a)." Fed.R.App.P. 4(a)(5).

traordinary event. *See 650 Park Avenue Corp. v. McRae*, 836 F.2d 764, 767 (2d Cir.1988). *Cf. Spound v. Mohasco Industries, Inc.*, 534 F.2d 404, 411 (1st Cir.) ("Excusable neglect calls for 'circumstances that are unique or extraordinary.' "), *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976).

We uphold the extension. First, tending to make appellants' conduct "excusable" is the fact that their original appeal *may* have been adequate as filed. The original notice of appeal said that all plaintiffs appealed "through the Plaintiffs' Steering Committee." The PSC, as the district court observed, represents "by its very nature ... *all* plaintiffs." The Supreme Court observed in *Torres*, "[I]f a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires." 108 S.Ct. at 2408–09. The Court further stated that Rule 3(c) is satisfied by "some designation that gives fair notice of the specific individual or entity seeking to appeal." *Id.* at 2409. By representing that all plaintiffs were appealing "through the Plaintiffs' Steering Committee," appellants arguably gave fair notice of the specific appellants, since the PSC existed precisely to represent all the active plaintiffs in this case. Such notice may, therefore, have satisfied Rule 3(c).

We need not decide this, however. The only issue is whether, assuming the first notice was defective, the neglect was excusable. Certainly there were circumstances here—the PSC's representative status, the extraordinary size of the plaintiff group, the reasonableness of the first notice—which made any error in appellants' initial filing an excusable blunder. The district court did not err in so holding. *Cf. Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061, 1063 n. 2 (5th Cir.1979) (noting that under amended Rule 4(a) "flexibility is intended in the granting of extensions").

## II. *Applicability of the Eleventh Amendment to the Tourism Company*

The Eleventh Amendment immunizes the states from suits for damages in federal court, in the absence of abrogation by Congress or waiver by the state. *See generally Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Commonwealth of Puerto Rico is treated as a state for Eleventh Amendment purposes. *See Ramirez v. Puerto Rico Fire Service*, 715 F.2d 694, 697 (1st Cir.1983). Whether a state-created entity such as the Tourism Company is an "arm of the state," entitled to Eleventh Amendment protection, depends primarily on "whether it performs a governmental function, whether it functions with substantial autonomy, to what extent it is financed independently of the state treasury, and if a judgment sought to be entered against the [entity] will be satisfied out of the state treasury." *Figueroa–Rodriguez v. Aquino*, 863 F.2d 1037, 1042 (1st Cir.1988); *Culebras Enterprises Corp. v. Rivera Rios*, 813 F.2d 506, 517 (1st Cir. 1987). Other factors relevant to the Eleventh Amendment inquiry include whether the entity "has been separately incorporated; ... whether it has the power to sue and be sued and to enter into contracts; whether its property is immune from state taxation, and whether the sovereign has immunized itself from responsibility for the [entity's] operations." *Ainsworth Aristocrat International Party v. Tourism Co.*, 818 F.2d 1034, 1037 (1st Cir.1987).

This court previously addressed the issue of whether the Eleventh Amendment applies to the Tourism Company in *Ainsworth, supra*. In *Ainsworth*, the district court had held that the Tourism Company was protected by the Eleventh Amendment. On appeal, this court held that the district court had failed to apply the relevant factors. The statutes dealing with the Tourism Company led us to go further and to surmise that these factors weighed in favor of finding that the Tourism Company was *not* an arm of the state. 818 F.2d at 1037–38. However, we declined to resolve that issue because the record was incom-

plete both as to the degree of control the Governor's administration exerts over the Tourism Company and the funding it receives from the Commonwealth of Puerto Rico. *See id.*[3]

▮▮▮ In this case, there is a substantial record, and the district court has made the relevant factual findings. On the basis of that record and these findings, we affirm the lower court's finding that the Tourism Company is an arm of the Commonwealth of Puerto Rico for Eleventh Amendment purposes.

Regarding the extent of control exerted by the Governor's administration, the district court found that there is constant communication between the executive branch and the agency's head, the Director of Tourism, who is a member of the Governor's cabinet. The court noted that under Puerto Rico law, the Governor appoints the members of Tourism Company's board of directors.[4] In addition, the court found that, while by statute the Board selects its Executive Director,[5] as a practical matter the Governor determines who this person will be. Finally, the court found that while the Governor's office does not exercise control over the day-to-day internal operations of the Tourism Company, it does exercise significant control "over the planning and administration of [the Tourism Company's] policies." The Tourism Company is required to submit financial and progress reports to the Governor and the Legislature at the beginning of each legislative session.[6]

As to the funding of the Tourism Company, the district court found that the Tourism Company does not operate for profit, and that 72.9 percent of its 1987–88 budget came from the general funds of Puerto Rico. The court also stated that the sworn statement of the Tourism Company's Executive Director, Miguel A. Domenech, attested to the fact that payment of any judgment against the Tourism Company would have to be made by the Commonwealth. In one of his statements, Mr. Domenech indicated that "three fourths of the Company's revenue comes from the general fund of the Commonwealth of Puerto Rico through Joint Resolutions passed by the Commonwealth legislature for each fiscal year." He also indicated that the amount of expenses that the Tourism Company incurs in a given year will have a direct effect on the amount that the legislature will subsidize the Company the next year.

PSC has not seriously disputed the district court's factual findings. However, PSC argues that the district court gave insufficient weight to the fact that the Tourism Company carries out its day-to-day activities with little interference from the Governor.[7] Additionally, PSC argues that the Eleventh Amendment should not apply, because Puerto Rico law provides that the Commonwealth will not be liable for the debts of the Tourism Company.[8]

These matters do not persuade us. Notwithstanding the statutory provision stating that the Commonwealth is not responsible for the debts of the Tourism Company, the district court found that roughly 70–75 percent of the funds available to the Tourism Company are provided by the tax-

---

3. The court accordingly remanded for a full hearing on the issue. The case was later dismissed as moot.

Our tentative statement in *Ainsworth* that the Tourism Company may not be an arm of the Commonwealth, was based in part on the erroneous impression that "[t]he Company is largely funded through the monies it receives as a result of its slot machine concessions." 818 F.2d at 1038. The district court in this case found that less than twenty percent of the Tourism Company's 1987–88 budget came from slot machine profits.

4. *See* 23 L.P.R.A. § 671b.

5. 23 L.P.R.A. § 671c.

6. 23 L.P.R.A. § 671j.

7. As examples of the Tourism Company's autonomy, PSC argues that the Executive Director of the Company creates its programs with only occasional involvement from the Governor and that the Executive Director has great leeway in the investment of its funds. PSC also asserts that the Governor's aide in charge of monitoring the Tourism Company meets only with the Company's Executive Director and its Assistant Director and never with the entire board.

8. *See* 23 L.P.R.A. § 671k.

payers of the Commonwealth. To that extent, a judgment enforced against the Tourism Company is effectively a liability of the Commonwealth. *See Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 304–05 (6th Cir.1984) (link between revenues appropriated by the state legislature and those not so appropriated "has the effect of making any judgment against the [entity] a liability payable from the state treasury"), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 560–61 (5th Cir.1982) (the eleventh amendment bar applies to "state-held funds, regardless of their source, or location, whenever payment would interfere with the state's fiscal autonomy."). *But see Kovats v. Rutgers, State University*, 822 F.2d 1303, 1308 (3d Cir.1987) ("relief should not be viewed as coming from the state where an entity has the ability to pay a judgment from private funds not subject to state control").

Moreover, although the Tourism Company exercises some autonomy over its day-to-day operations, its Board of Directors is appointed by the Governor, and the Governor's office exercises significant supervisory powers over the Tourism Company. In light of this, as well as the Company's financial dependence on the Commonwealth, we affirm the lower court's finding that the Tourism Company is an arm of the Commonwealth and, as such, is entitled to Eleventh Amendment immunity. *See Perez v. Rodriguez Bou*, 575 F.2d 21, 25 (1st Cir.1978) ("The extent and nature of the Commonwealth of Puerto Rico's financial support for the University of Puerto Rico and the fact that the Commonwealth appoints the governing body of the University convinces us that the University is sufficiently an 'arm' of the state to be immune from damage suits under the Eleventh Amendment.") (citation omitted).

Our conclusion is supported by statutory provisions indicating that the Tourism Company is not an independent entity, but rather is a part of the Commonwealth government, performing a governmental function. The Tourism Company is, by statute, an "instrumentality of the Government of Puerto Rico"; [9] its property is exempt from Puerto Rico taxes and fees; [10] and it has the power of eminent domain.[11] Moreover, the district court found that it was "uncontested that [the Tourism Company] performs a vital governmental function in promoting the tourism industry and supervising gambling in the casinos in Puerto Rico." [12]

We recognize that the governing statutes also indicate that in certain respects the Tourism Company acts as an autonomous body. For example, the statutes provide that the Tourism Company has a "legal existence and personality independent of the Commonwealth Government," [13] and that the Tourism Company shall have the power to control its own properties and funds; [14] to enter into contracts; [15] and to make loans and issue bonds.[16] However, when viewed in light of the Tourism Company's financial and political dependence on the Commonwealth, these provisions are not sufficient to render the Company an independent entity for Eleventh Amendment purposes.

Nor does the fact that the Tourism Company has the power "to sue and be sued" [17] strip the Company of its Eleventh Amendment immunity. As this court has previously stated, a statutory provision allowing a state agency to be sued does not necessarily indicate that "the legislature has waived the eleventh amendment and has consented to let the state be sued for money damages not only in a state but in a

9. 23 L.P.R.A. § 671a.

10. 23 L.P.R.A. § 671*o*.

11. 23 L.P.R.A. §§ 671d(h), 671*l*.

12. *See* 23 L.P.R.A. § 671e.

13. 23 L.P.R.A. § 671a.

14. 23 L.P.R.A. § 671d(f).

15. 23 L.P.R.A. § 671d(g).

16. 23 L.P.R.A. § 671d(*l*).

17. 23 L.P.R.A. § 671d(e).

federal court. A waiver is found only where it is manifest that waiver of the *eleventh amendment* was intended." *Culebras Enterprises Corp. v. Rivera Rios,* 813 F.2d 506, 517 n. 9 (1st Cir.1987). *See also Figueroa–Rodriguez v. Aquino,* 863 F.2d 1037, 1045 (1st Cir.1988). In this case, no such intent has been shown.

PSC argues that the Eleventh Amendment should not apply here, because, according to PSC, any judgment against the Tourism Company would be paid by its insurance carriers and, therefore, would not come out of public funds. This argument is without merit. If states were deemed to waive immunity by obtaining insurance, they would be forced to pay higher premiums for their insurance. Such a result would contravene the purpose of the Eleventh Amendment. Thus, the fact that any damages might be paid by an insurance carrier does not alter the fact of Eleventh Amendment immunity. *See Markowitz v. United States,* 650 F.2d 205, 206 (9th Cir.1981).[18]

AFFIRMED.

---

**18.** In view of the foregoing discussion, we see no reason to separately address PSC's contention that the district court erred in denying its motion to alter or amend the judgment.

