Alicia **SANCHEZ–LOPEZ,**
et al., **Plaintiffs,**

v.

Maria **FUENTES PUJOLS,**
et al., **Defendants.**

No. CIV. 01–1865(JAF).

United States District Court,
D. Puerto Rico.

Dec. 19, 2002.

Andres Guillemard–Noble, Monique Guillermard–Noble, Nachman, Guillemard & Rebollo, San Juan, PR, Hector J. Quijano–Borges, Mendez Mendez & Quijano Borges, Hato Rey, PR, for Alicia Sanchez–Lopez, All Plaintiffs, Hector Santiago–Gonzalez, Conjugal Partnership Santiago–Sanchez, Elmer Sauri–Santiago, plaintiffs.

Enrique J. Mendoza–Mendez, Mendoza & Baco, San Juan, PR, Jo–Ann Estades–Boyer, Commonwealth Department of Justice, San Juan, PR, for Maria Fuentes–Pujols, Governmental Development Bank of Puerto Rico, Ada Diaz–Rivera, defendants.

### *OPINION AND ORDER*

FUSTE, District Judge.

Plaintiffs, Alicia Sánchez López, Héctor Santiago González, Ivelisse Vélez Segarra, and the conjugal partnership existing between them; and Elmer Saurí Santiago

("Plaintiffs"), are suing the Puerto Rico Development Bank ("PRDB"), María Fuentes Pujols, individually and as Director of the Puerto Rico Development Bank; and Ada Díaz Rivera, individually and as Director of the Human Resources of the Puerto Rico Development Bank ("Defendants"). Plaintiffs allege political discrimination in violation of 42 U.S.C. 1983, 1985(3), 1988 (1994 & Supp.2002), and the First, Fifth, Tenth and Fourteenth Amendment of the Constitution of the United States of America. U.S. CONST. amends. I, V, X, XIV. Plaintiffs also bring local law claims and invoke this court's supplemental jurisdiction. Plaintiffs seek compensatory and punitive damages, as well as back pay and attorney's fees. *Docket Document No. 1.*

Pending before this court is Defendants' motion to dismiss the present complaint against the Puerto Rico Development Bank and the Defendant officers in their official capacities based on Eleventh Amendment immunity. *Docket Document Nos. 21 & 39.* Defendants allege that the PRDB is an arm of the state subject to Eleventh Amendment immunity. *Id.* Plaintiffs disagree, and counter with an opposition and sur-reply. *Docket Document Nos. 26 & 41.*

## I.

### *Applicable Law*

■ The Eleventh Amendment guards a state against claims brought in federal court by citizens of that or any other state.[1] *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct and Sewer Auth.,* 991 F.2d 935, 938 (1st Cir.1993) ("the federal courts now read the Eleventh Amend-

ment, notwithstanding its plain language, to prohibit them from hearing most suits brought against a state by citizens of that or any other state"). Puerto Rico has been treated as a state for purposes of the Eleventh Amendment. *Id.* at 939. Immunity under the Eleventh Amendment extends beyond the state to arms of the state. *Id.* Furthermore, actions asserted against government officials in their official capacity are deemed actions against the state since the real party in interest is the government and not the official. *Hafer v. Melo,* 502 U.S. 21, 25–26, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Accordingly, any cause of action brought against individual defendants in their official capacity will also be entitled to immunity if we find the PRDB is cloaked in Eleventh Amendment immunity.

■ The narrow question before us is whether the Puerto Rico Development bank is " 'an arm [or alter ego] of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend.' " *Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987) (quoting *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471(1977)). The entity asserting its immunity bears the burden of showing that it is an arm of the state. *Wojcik v. Massachusetts State Lottery Com'n,* 300 F.3d 92, 99 (1st Cir.2002).

■ The "mere imprimatur of state authority is insufficient to inoculate an agency or institution against federal court

---

1. The Eleventh Amendment reads:
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 U.S. CONST. amend. XI.

jurisdiction. A 'slice of state power,' without more, will not sate the Eleventh Amendment." *Metcalf,* 991 F.2d at 939. Instead, the Eleventh Amendment's primary concern is to "minimize federal court's involvement in the disbursal of the state fisc." *Id.* As a general rule, if a state must satisfy judgments against an institution out of state coffers, the institution is cloaked by Eleventh Amendment immunity. *Id.*

However, when it is not clear whether, or to what extent, that obligation exists, other areas should be examined. The First Circuit has identified seven areas of further inquiry:

> (1) whether the agency has the funding power to enable it to satisfy judgments without direct state participation or guarantees; (2) whether the agency's function is governmental or proprietary whether the agency is separately incorporated; (4) whether the state exerts control over the agency, and if so, to what extent; (5) whether the agency has the power to sue, be sued, and enter contracts in its own name and right; (6) whether the agency's property is subject to state taxation; and (7) whether the state has immunized itself from responsibility for the agency's acts or omissions.

*Id.* at 939–940.

Consequently, the more tightly the agency and the state are entangled, the more probable it becomes that the agency shares the state's Eleventh Amendment immunity. *Id.* at 940.

## II.

### *Analysis*

According to the statute creating the PRDB, the "Bank shall have its own legal personality and existence apart from the Commonwealth of Puerto Rico and any of its agencies, instrumentalities or public corporations." 7 L.P.R.A. § 611a(b) (1981 & Supp.1998). Furthermore, "debts, obligations, contracts, notes, receipts, expenses, accounts, funds, enterprises and properties of the Bank shall be its sole responsibility and not the responsibility of the Commonwealth of Puerto Rico, its agencies, instrumentalities and public corporations." *Id.* at § 611a(c). To that end, the PRDB is "empowered to issue its own bonds ... to provide funds to achieve any of its corporate purposes, ... and to pay all the other bank expenses ...." 7 L.P.R.A. § 611g. The PRDB also has the power to sue or be sued, *Id.* at § 611b(a), may exert corporate powers, *Id.* at § 611b(k), and may control its own property and funds, *Id.* at § 611d. With these provisions, the legislature has seemingly "erect[ed] a wall between the [PRDB's] appetite and the public fisc." *Metcalf,* 991 F.2d at 940. This legislative protective barrier is particularly salient, since it answers the main question the Eleventh Amendment poses: will the state be responsible for the debts of the PRDB?

Defendants argue that a separate financial identity is not dispositive of the issue. Defendants propose that *Dupont Plaza Hotel Fire Lit. v. Tourism Co. of Puerto Rico,* 888 F.2d 940 (1st Cir.1989), and *Buck v. Puerto Rico Symphony Orchestra Corp.,* 849 F.Supp. 141 (D.P.R.1994), support their position. In both *Dupont* and *Buck,* the agencies in question had statutory provisions similar to those of the PRDB that absolved the state of liability for their debts. The First Circuit and the District Court of Puerto Rico, respectively, granted the agencies Eleventh Amendment immunity. Defendants contend that the courts in *Dupont* and *Buck* engaged in a comprehensive weighing of a multiplicity of factors, granting greater weight to factors such as the composition of the agency's

governing body and the preservation of the dignity of the state.

Defendants' reliance on these two cases is misplaced. While these cases warn against blind reliance on statutory language, they do not diminish or eliminate the importance of financial independence. Instead, these cases caution that a state's practical liability for an agency's debts may contradict statutory language which absolves the state of the agency's debts.

Thus, in *Dupont*, the First Circuit affirmed the district court's grant of Eleventh Amendment immunity to the Puerto Rico Tourism Company, even though statutory provisions provided that the Commonwealth was not responsible for the Tourism Company's debts. *Dupont*, 888 F.2d at 944. Instead, the district court found that "the Tourism Company does not operate for a profit, and that 72.9 percent of its budget came from the general funds of Puerto Rico." *Id.* Therefore, "a judgment enforced against the Tourism Company is effectively a liability of the Commonwealth." *Id.* The court concluded that day to day control by the Commonwealth, coupled with "financial dependence on the Commonwealth" supported a grant of Eleventh Amendment immunity. *Id.* Thus, while the court balanced other factors, it did not ignore fiscal independence in favor of state dignity or governmental control, as Defendants contend. Rather, the court determined that the statutory provisions were inapposite given the practical reliance of the Tourism Company on the state fisc.

Similarly, in *Buck*, the District Court of Puerto Rico found that the Puerto Rico Symphony Orchestra and the Musical Arts Corporation were arms of the state even though statutory language immunized the state from the agencies' debts. 849 F.Supp. at 146–147. The court held that both deserved Eleventh Amendment im-

munity since both "received a large proportion of their funds from the government," amongst other factors. *Id.* at 146.

Defendants' argument is therefore correct in that these cases urge us to look beyond the plain text of the statute to ascertain if the agency is truly independent. However, these cases do not diminish the importance of fiscal independence. In fact, they underscore the importance of fiscal independence within an Eleventh Amendment analysis. In both cases, the courts found that the statutory clauses defining a financially independent agency, although legally binding, were in *practical* effect meaningless. Consequently, in the absence of true fiscal independence, factors such as governmental control tilted the scale toward a grant of Eleventh Amendment immunity.

■ Defendants do not allege, let alone offer, any evidence to substantiate a finding that the PRDB is fiscally independent. Defendants point out that PRDB received fifteen million dollars from the Puerto Rico Government Development Bank as its original capital. However, Eleventh Amendment immunity is premised on the continuing support and disbursal from the state government, not on initial capital output. *Royal Caribbean v. Puerto Rico Ports Authority*, 973 F.2d 8, 10 (1992) (finding that an initial disbursement of two million dollars to the Puerto Rico Ports Authority in the 1960s did not grant Eleventh Amendment immunity where the Ports Authority had not received substantial Commonwealth financing in the years prior to the suit). In a similar case to the one at bar, the Puerto Rico Aqueduct and Sewer Authority ("Authority") was not granted Eleventh Amendment immunity even though it was minimally subsidized by the central government. *Metcalf*, 991 F.2d 935, 940. The First Circuit found that the Authority "relied mostly on user

fees and bonds to support its operations. The government does not give [the Authority] a blank check or an indeterminate carte blanche allowing it to draw on the public treasury as it thinks necessary." *Id.* at 940–941. The court further analogized the structure of the agency to that of typical political subdivisions, such as municipalities. While these may receive part of its budget from the state, "such entities do not automatically (or even usually) come within the zone of protection demarcated by the Eleventh Amendment." *Id.* The court concluded that a state agency cannot claim Eleventh Amendment immunity solely because a judgment against it may absorb funds donated by the state. *Id.* As in *Metcalf,* the fact that the PRDB was originally funded by a 15 million dollar donation by the government does not, alone, advocate for immunity. As the PRDB's statutory provisions make clear, the PRDB is for all legal purposes a separate corporate entity which cannot legally attach state funds to satisfy an adverse judgment against it.

Defendants do not forward any more evidence regarding the financial dependence of the PRDB and we necessarily find that the PRDB is fiscally independent.

Nonetheless, Defendants assert that the financial independence prong is not dispositive of the question of Eleventh Amendment immunity and instead argue that other factors tilt the scale towards a finding of immunity. However, as we explicated *supra,* the primary concern of the Eleventh Amendment is to minimize federal interference with disbursement of state funds. In *Metcalf,* a finding of statutory financial independence was enough to deny the Puerto Rico Sewer Authority ("PRASA") Eleventh Amendment immunity. As the court stated, "the PRASA's inability to draw on the public fisc cripples its immunity defense." 991 F.2d at 939. Here, the

PRDB may not draw on the public fisc, and thus, under a *Metcalf* analysis, we may not extend Eleventh Amendment immunity to the PRDB. However, to complete their investigation, the First Circuit in *Metcalf* considered factors similar to the ones forwarded by Defendants here. In the interest of a comprehensive analysis, we do the same.

Defendants first argue that the Commonwealth wields substantial control over the PRDB, in that five of the nine board members are government officials and the remaining four are appointed by the Governor with the consent of the Senate. 7 L.P.R.A. § 611d(a). They also point to statutory provisions that exclude the PRDB from taxation, *Id.* at 611f, and that require that the PRDB submit financial reports to the Commonwealth, *Id.* at 611o.

In *Hess v. Port Auth. Trans–Hudson Corp.,* 513 U.S. 30, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994), the Supreme Court addressed whether the defendant Port Authority was entitled to Eleventh Amendment immunity. The defendant alleged that the states wielded substantial control over the Port Authority, since the states can "appoint and remove the commissioners, the Governors can veto Port Authority actions, and the states' legislators can determine the projects the Port Authority undertakes." *Id.* at 47, 115 S.Ct. 394. The Supreme Court, however, stated that "ultimate control of every state-created entity resides with the State, for the State may destroy or reshape any unit it creates." *Id.* Thus, while " 'political subdivisions exist solely at the whim and behest of their State,' . . . . cities and counties do not enjoy Eleventh Amendment immunity." *Id.* (citing *Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 313, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990)). Moreover, "rendering control dispositive does not home in on the impetus for the

Eleventh Amendment: the prevention of federal-court judgments that must be paid out of a State's treasury." *Id.* at 48, 115 S.Ct. 394.

Similarly, in *Royal Caribbean,* the First Circuit granted the Puerto Rico Ports Authority Eleventh Amendment immunity despite the Commonwealth's control over the agency's executives, planning, and administration, finding that notwithstanding these factors, the Port Authority was solely responsible for its debts and obligations and was therefore not cloaked in Eleventh Amendment immunity. 973 F.2d. at 10–11. Accordingly, in the case at bar, the Commonwealth's appointment of the board of directors can be granted little weight in comparison to the PRDB's ability to finance its own operations and its inability to draw on the state fisc.

Defendants also assert that the PRDB performs a governmental rather than proprietary function and that this renders it an arm of the state. The statutes involving the PRDB state that the PRDB is "an instrumentality of the Commonwealth of Puerto Rico ... which has as its purpose the promotion of the development of the private sector of the economy of Puerto Rico." 7 L.P.R.A. 611a(a). However, the nature of the PRDB's function "is only one part of the equation, and, standing alone, it is insufficient to bring [PRDB] behind the Eleventh Amendment's shield." *Metcalf,* 991 F.2d at 942. Furthermore, while an expressed public purpose makes the PRDB's activities seem "more 'governmental' and less 'proprietary', these provisions are also consistent with proprietary activities and the finding of no immunity." *Royal Caribbean,* 973 F.2d. at 12. "After all, a private entity might operate a hotel or restaurant, in par with the object of helping to promote economic prosperity and development." *Id.*

The PRDB is granted the authority to exert "all those corporate powers that are not incompatible with those expressed herein which, pursuant to the laws of Puerto Rico, are conferred on the corporations, and exercise them within and without Puerto Rico in the same extent and form that a natural person would." 7 L.P.R.A. § 611b(k). Furthermore, the PRDB can invest in businesses, loan money, invest its funds, borrow money and contract debts for its corporate ends, issue its own bonds, and in general, act like a private bank. 7 L.P.R.A. 611b. Express statutory public goals are not enough to divest the PRDB of its proprietary nature.

Notwithstanding Defendants arguments to the contrary, the PRDB exists with legal, fiscal, and operational autonomy. Defendants have not proffered enough proof to suggest otherwise, and without more, the PRDB may not cloak itself with the Commonwealth's Eleventh Amendment immunity.

## IV.

### *Conclusion*

Because we find that the Puerto Rico Development Bank operates with fiscal and operational autonomy, we hereby DENY Defendants' motion to dismiss based on Eleventh Amendment immunity.

**IT IS SO ORDERED.**