**CBR HOLDINGS, L.P., Claimant,**

v.

**HOTEL DEVELOPMENT CORP., Respondent.**

**Hotel Development Corp., Plaintiff,**

v.

**CBR Holdings, L.P., et al Defendant.**

Nos. CIV.01–1475(HL), CIV.01–1546(HL).

United States District Court, D. Puerto Rico.

April 29, 2002.

Fernando Perez–Colon, Eric Perez–Ochoa, O'Neill Fernandez Gilmore, Rafael Alonso–Alonso, Reichard & Escalera, San Juan, PR, for Plaintiffs.

Rafael Escalera–Rodriguez, Pedro Santiago–Rivera, Reichard & Escalera, Fernando Perez–Colon, Eric Perez–Ochoa, O'Neill Fernandez Gilmore & Perez Ochoa, P.S.C., San Juan, PR, for Defendants.

## OPINION AND ORDER

LAFFITTE, Chief Judge.

These consolidated actions arose out of a dispute surrounding the execution of a Purchase and Sale Agreement ("Agree-

ment") on August 26, 1998 between seller Hotel Development Corporation ("HDC") and purchasers Condado Beach Resot Hotel, S.E., Condado Beach Vacation, S.E., Vanderbilt Condominium, S.E., Vanderbilt Club, S.E., and Condado Village, S.E. (hereinafter collectively known as "the partnerships"). In the Agreement, HDC promised to sell the property known as the Condado Beach Trio to the partnerships.

In February, 2001, the partnerships terminated the Agreement pursuant to section 11.2 of the same and requested the full damages provided under the contract. The partnerships then dissolved and assigned their rights and obligations to CBR Holdings, L.P. ("CBR"). CBR, as the assignee, requested that HDC submit to arbitration in order to resolve several controversies that had arisen, including CBR's request for specific performance of the Agreement. This request spawned several lawsuits including the two actions before this Court. In the first, civil action 01–1475, CBR sued in this Court for a cautionary notice of *lis pendens*. The second action, civil action 01–1546, is a declaratory relief action initially brought in local court by HDC, and later removed to this Court by CBR. Both actions are based solely on diversity jurisdiction.

Before ever reaching the merits of this case, the Court, in an Order issued on September 18, 2001, Dkt. # 32, raised a question as to HDC's possible status as a state actor. HDC is a wholly owned subsidiary corporation of the Puerto Rico Tourist Company ("PRTC"), a recognized arm of the Commonwealth of Puerto Rico ("the Commonwealth"). If HDC is also an arm of the state, this Court would be unable to exercise jurisdiction over either case. Both parties have briefed the issue, and the Court is now prepared to rule on HDC's status.

## DISCUSSION

 It is a basic principle of law that diversity jurisdiction does not exist where a state is a party. *U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 499 (1st Cir.2000); *Moor v. Alameda County*, 411 U.S. 693, 717, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973) (stating that a state cannot be a "citizen of itself for purposes of diversity jurisdiction"). By its own terms, the diversity jurisdiction statute does not extend to states, nor does it extend to Puerto Rico. 28 U.S.C. § 1332; *id.* § 1332(d) (Puerto Rico treated as a "state" and therefore not subject to diversity jurisdiction). Political subdivisions, on the other hand, formally classified as a "body politic or corporate," such as counties or municipalities, are presumed to be citizens of a state for diversity purposes unless they act as the "arm" or "alter ego" of the State. *Moor*, 411 U.S. at 718, 93 S.Ct. 1785; *U.S.I. Properties Corp.*, 230 F.3d at 499 (stating arms and alter egos in effect stand in the same position as the State and are therefore not subject to diversity jurisdiction.) Generally, therefore, public and private corporations are usually regarded as "citizens," where most unincorporated state agencies and departments are recognized as arms of the State. *University of Rhode Island v. A.W. Chesterton Co.*, 2 F.3d 1200, 1203–1204 (1st Cir.1993).

 In this case, the primary issue before the Court is whether HDC, a wholly owned incorporated subsidiary of a recognized state agency, is sufficiently depended upon the Commonwealth to be deemed its alter ego for diversity purposes. In a similar case, the First Circuit recognized that the State's formal incorporation of a State-related entity is not necessarily dispositive on the issue of that entity's autonomy or independence, either for immunity or diversity purposes. *Chesterton*, 2 F.3d at 1204. Rather, because an incorporated

entity of this type may possess unique characteristics, courts should conduct a thorough examination into the precise nature of the entity from both an operational and fiscal standpoint. *Moor,* 411 U.S. at 719, 93 S.Ct. 1785; *id.* at 721, n. 54, 93 S.Ct. 1785 (stating that it is never advisable to make "conclusory" determinations as to the entity's legal character). Courts having conducted such examinations of public and government corporations have arrived at divergent conclusions. *See e.g., In Re San Juan Dupont Plaza Hotel Fire Litigation,* 888 F.2d 940, 944–945 (1st Cir. 1989) (finding the Puerto Rico Tourism Company, a public corporation, to be an arm of the Commonwealth of Puerto Rico for Eleventh Amendment purposes); *Villegas Davila v. Pascual,* 631 F.Supp. 919, 922 (D.P.R.1986) (finding Compañia de Fomento Recreativo, a public corporation, to be sufficiently dependent on the Commonwealth of Puerto Rico to be deemed an arm of the State); *but see, Kovats v. Rutgers,* 822 F.2d 1303, 1312 (3rd Cir.1987) (finding that a state created university that served a state purpose with the aid of state funding was not an arm of the State since it was an independent entity able to direct its own actions); *Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority,* 991 F.2d 935, 941 (1st Cir.1993) (finding that although the Puerto Rico Aqueduct Sewer Authority received occasional legislative appropriations it was financially independent, and therefore not an alter ego of Puerto Rico); *Riefkohl v. Alvarado,* 749 F.Supp. 374 (D.P.R.1990) (finding that the Puerto Rico Electrical Power Authority not to be immune in suit for damages because it is fiscally autonomous).

■ In deciding an entity's status, courts should evaluate the level of entanglement that exists between the entity and the State. *See cf. Metcalf & Eddy,* 991 F.2d at 940 (in the immunity context). To that end, the First Circuit has propounded a list of criteria often germane to the Eleventh Amendment immunity determination that is instructive in deciding the issue at hand. *Chesterton,* 2 F.3d at 1205; *see also Northeast Fed. Credit Union v. Neves,* 837 F.2d 531, 534 (1st Cir.1988) (stating that the test for determining whether an entity is a citizen of a State for diversity purposes is analogous to the test used to the determine if it is the State for Eleventh Amendment immunity purposes). Namely, courts should consider whether the entity (1) performs an "essential" or "traditional" government function; (2) exercises substantial autonomy over its internal operations; (3) enjoys meaningful access to, and control over, funds it has generated and that have not been appropriated from the State treasury; (4) may sue and be sued in its own name; (5) can enter into contracts in its own name; (6) has been granted a state tax exemption on its property; or (7) has been expressly debarred from incurring debts in the State's name or behalf. *Chesterton,* 2 F.3d at 1205. While these factors are neither exhaustive nor meant to be mechanically applied, they are, however, designed to disclose the extent to which the State-related entity enjoys operational as well as financial autonomy from the State itself. *Id.* Using this construct, the Court must establish whether HDC possesses a "sufficiently independent corporate character to dictate that it be treated as a citizen" of Puerto Rico. *Moor,* 411 U.S. at 721, 93 S.Ct. 1785.

■ Of course, CBR, the party invoking diversity jurisdiction, bears the *ultimate* burden of proving diversity of citizenship. *Bull HN Info. Systems, Inc. v. Hutson,* 229 F.3d 321, 328 (1st Cir.2000).

I. HDC's Operational Dependence:

HDC's claim that it is an arm of Puerto Rico is predicated mostly upon the fact

that it is a wholly owned corporate subsidiary of PRTC. PRTC is a public corporation created by Puerto Rico law as well as a recognized arm of the Commonwealth of Puerto Rico charged with an essential government function namely to "promote, develop, and improve the tourist industry." 23 L.P.R.A. 671(d); *Dupont Hotel,* 888 F.2d at 944 (recognizing that PRTC performs a vital government function in promoting the tourism industry and supervising gambling in the casinos). To that end, PRTC has been endowed under its enabling statute with the power to create subsidiary corporations when necessary to help it accomplish its governmental objectives. 23 L.P.R.A. 671d(j). It was under this authority that PRTC acquired HDC in 1994 from another public corporation, the Puerto Rico Industrial Development Company ("PRIDCO").[1] As PRTC's subsidiary, HDC has been delegated the authority to develop and maintain the hotel industry in Puerto Rico, a primary component of PRTC's overall mission to promote tourism. *See e.g.,* 23 L.P.R.A. § 671d(*o*)(8) (states that PRTC is responsible for improvement in hotel services); 23 L.P.R.A. 671e(5) & (6) (giving PRTC the authority to train hotel employees and the duty to maintain the quality of hotel services and facilities). HDC avers that as an instrumentality of PRTC, it too should be afforded the same status as its parent, and therefore not be subjected to diversity jurisdiction.

However, the Court cannot simply declare HDC to be an arm of the State based on this fact. Nor can it do so even though it is evident that HDC serves as a vehicle through which PRTC performs its essential government function, as this factor alone is not dispositive. Rather, the Court is bound to conduct a more comprehensive examination into the legal framework within which the relationship between PRTC and HDC functions. Specifically, the Court must ascertain the level of control PRTC, as a government instrumentality, exercises over HDC.

From an operational standpoint, PRTC, and in turn, the Governor's office exercise a substantial degree of control over HDC's internal operations. HDC is operated by a Board of Directors presided over by the Executive Director of PRTC ("Executive Director"). The Executive Director is appointed by the Governor, and is a member of the executive cabinet. As a cabinet member, the Executive Director is in constant communication with the Governor, and while the Governor's office does not run the day-today operations of the PRTC, it does exert significant control over the planning and administration of its tourism policies, and as a hierarchal consequence, over HDC's policies. *Dupont Hotel,* 888 F.2d at at 943.

This fact is not surprising inasmuch as the Governor's supervisory powers over HDC have existed from its inception. In 1992, the Governor, pursuant to an executive order, created an consulting board, composed of the heads of several agencies and public instrumentalities, to help HDC achieve its objectives.[2] In 1994, after HDC was acquired by PRTC, the Governor vacated this order and dismantled the consulting board stating that PRTC had the proper means to offer HDC adequate counsel.[3] By assigning PRTC the responsibility of counseling HDC, the Governor ensured that his own ability to oversee HDC's functions would not diminish.

1. HDC was initially incorporated by PRIDCO in 1991.

2. Administrative Bulletin No. OE–1992–25.

3. Dkt. # 37, exh. 5.

■ From the aforementioned, it is evident that HDC and PRTC are inextricably linked. This conclusion is further bolstered by the fact that PRTC is HDC's sole shareholder, and as such, is empowered with the ability to amend HDC's Articles of Incorporation.[4] Additionally, PRTC serves as HDC's resident agent, and also shares a common address and headquarters with HDC.[5] These consideration taken as a whole favor the conclusion that HDC and PRTC are sufficiently intertwined to warrant that HDC also be deemed an arm of the state.

Nevertheless, CBR contends that in certain respects HDC acts as an autonomous corporate entity. For example, HDC was incorporated as a for profit corporation with the capacity to enter into contracts in its own name; handle and control its own properties and funds; incur debt by taking loans in its name; and generate revenue through rental income, management fees, and the sale of hotel properties.[6] However, when viewed in light of the fact that HDC ostensibly engages in these activities under the direction and supervision of PRTC, these factors are insufficient to render HDC an autonomous entity.

Furthermore, even the fact that HDC has the capacity to sue and be sued in its own capacity is not sufficient to persuade the Court that it is a functionally independent entity. This fact, at least in the Eleventh Amendment immunity inquiry, has been held to be unpersuasive inasmuch as such a provision while allowing a State or its arms to be sued in state court does not constitute a waiver of its immunity from suits in federal court. *Dupont Hotel,* 888 F.2d at 944. That is to say that an arm of the State does not lose its designation as a state actor merely because it has the capacity to be sued in its own state or local courts. Accordingly, this factor in the diversity context, like in the immunity context, is insufficient to establish HDC's independence from the Commonwealth.

On HDC's operational autonomy, CBR has failed to meet its burden proof. On the overall balance, it is clear that the Commonwealth exercises a great deal of control over HDC's internal operations through PRTC. However, this aspect is only half the coin. The Court cannot render a final decision without also examining HDC's fiscal relationship with the Commonwealth.

## II. HDC's Fiscal Dependence:

Although the considerations in the multi-factored test are nonweighted, courts generally agree on the primacy of the financial autonomy factor in the overall balance. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1038 (1st Cir.1987); *Chesterton,* 2 F.3d at 1210, n. 15. On this aspect, CBR avers that HDC is fiscally autonomous for several reasons. First, CBR cites to an audit performed by Ernst and Young in 1997 indicating that HDC has access to and the ability to generate non-appropriated revenue to fund its internal operations. *Metcalf & Eddy,* 991 F.2d at 942 (stating that an agency's ability to generate a revenue stream and thereby finance its own operations is an important attribute of the agency's separate identity). However, this fact is not as salient considering that as of November, 2001, HDC does not own any real properties apart from the Condado Beach Trio, and does not have a revenue stream except for interest payments gen-

---

4. Dkt. # 37, exh. 4.

5. Dkt. # 37, exh. 4.

6. Articles of Incorporation, Dkt. # 37, exh. 1.

erated from a sale of a hotel and a bank account.[7]

Next, CBR highlights HDC's ability to make loans and to raise revenue through the issuance of bonds under the same conditions as provided in PRTC's enabling statute, 23 L.P.R.A. § 671(d)(1). How much revenue is actually raised through the issuance of bonds is uncertain. This is significant in light of the fact that in declaring PRTC to be an arm of the Commonwealth, the First Circuit did not find the mere capacity to raise funds in this manner to be a persuasive indication of entity's financial autonomy where the vast majority if its operating budget was derived from the general funds of the Commonwealth. *Dupont Hotel*, 888 F.2d at 943. The key question for the Court, therefore is how much of HDC's budget is comprised of funds received directly from the Commonwealth.

From the record, the Court is unable to ascertain precisely what percentage of HDC's budget derives from public funds. However, an exact amount is not required for this inquiry. *Chesterton*, 2 F.3d at 1216. The key concern is financial dependence, and HDC has presented evidence to suggest that without Commonwealth funding, it would be unable to operate. HDC avers that for the last several years it has financed its transactions and operational expenses with loans made by the Government Development Bank of Puerto Rico ("the Bank"). Needing further funding, the Board, through several resolutions, authorized its president to request a line of credit and several extensions to that line from the Bank.[8] Not surprisingly, this coupled with the fact the HDC has virtually

no other source of income have caused it to become greatly indebted to the Bank.

The problem here is that even though HDC functions through the use of public funds, those funds have been disbursed to HDC in the form of loans and not direct legislative appropriations. Loans must be repaid, and there is nothing in the record to suggest that the Commonwealth is legally responsible for HDC's debts. However, the Court cannot ignore the fact that the Commonwealth has taken it upon itself not only to repay HDC's debts voluntarily, but also appropriated funds for its benefit. In 2001, the Puerto Rico legislature passed three resolutions regarding HDC directly. The first appropriated four-million dollars from the Commonwealth's general fund to specifically amortize HDC's debt.[9] The second resolution appropriated eight-million dollars credited to the Public Works Improvement Fund and was slated to be used for the development of the Condado Beach Trio, a property owned solely by HDC.[10] Finally and more significantly, the legislature also appropriated one-hundred and twenty-five million dollars over the next thirty years to pay off all of HDC and PRTC's remaining debt with the Bank.[11] Without these appropriations, it is clear that HDC would be unable to function. These appropriations also suggest that HDC is no ordinary corporation, but rather a government entity secured by the Commonwealth's treasury.

Apart from the Commonwealth, HDC is also heavily dependent on PRTC for financial support. For example, when PRTC acquired HDC is 1994, it assumed certain obligations including HDC's eighty-five

7. Dkt. # 43, exh. 2.

8. Dkt. # 43, exh. 1.

9. Dkt. # 4, exh. 3.

10. Dkt. # 4, exh. 4.

11. Law No. 164, 2001.

million dollar debt with the Bank.[12] PRTC also made payments on HDC's fifty-million dollar note owed to the Bank for money used in connection with the construction of a hotel. Lastly, PRTC makes payments, presumably with public funds, directly on behalf of HDC including paying for HDC's employee payroll.[13] These factors clearly belie CBR's arguments.

CBR, on the other hand, argues that because any judgment entered against HDC would not be paid with public funds, it is a separate entity. In the Eleventh Amendment context, this factor namely whether a judgment against HDC would act as a financial drain on the State treasury is essential in determining whether a State-related entity is an arm of the State for immunity purposes. *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979); *Edelman v. Jordan,* 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). According to CBR, HDC cannot be deemed an arm of the Commonwealth because any judgment levied against it would be paid by its insurance carriers and not the taxpayers. This argument, however, is without merit. The First Circuit has specifically held that the fact that a judgment would be paid from insurance proceeds does not alter an entity's status as an arm of the State for immunity purposes. *Dupont Plaza,* 888 F.2d at 945. Following the First Circuit's lead, this Court finds this factor to be minimally probative in the diversity context.

From the evidence on record, CBR has failed to prove HDC's fiscal independence from the Commonwealth. More accurately, the evidence reflects that the legislature's appropriations and PRTC's pay-

ments have maintained HDC's operations to such an extent that any ability it has to generate non-appropriated revenues has been rendered functionally insignificant.

## CONCLUSION

While HDC possesses certain attributes common among independent entities, the Court cannot ignore the fact that HDC acts as a vehicle through which PRTC and the Commonwealth implement essential government policies. This coupled with the Commonwealth's willingness to repay HDC's vast debt have led the Court to conclude that HDC is sufficiently dependent on the Commonwealth for both its operational and fiscal existence. Hence, the Court hereby finds HDC to be an arm of the Commonwealth, and therefore not subject to diversity jurisdiction. However, because such inquiries vary on a case by case basis and are of a fact intensive nature, the Court hereby limits the holding of this case to the facts presented.

Finally, because one of the consolidated actions before the Court was initially filed in a local court and then later removed, the Court feels that as a procedural matter it will make the issuance of judgment easier if these cases were separated. Accordingly, the Court hereby de-consolidates these cases.

WHEREFORE, the Court finds that HDC serves as an arm of the Commonwealth, and is therefore not subject to diversity jurisdiction. Accordingly, the Court cannot exercise jurisdiction over either case. As a result, the Court hereby dismisses civil action 01–1475 without prej-

12. Dkt. # 37, exh. 4.

13. This presumption is based on the fact that roughly 70–75% of PRTC's budget is provided

by the Commonwealth. *Dupont Hotel,* 888 F.2d at 943–944.

udice, and remands civil action 01–1546 to the local court for further proceedings.

**IT IS SO ORDERED.**