Jose G. CRUZ, Plaintiff

v.

Commonwealth of PUERTO RICO—Dept. of Justice, et al., Defendants.

Civil No. 05–2258 (FAB).

United States District Court, D. Puerto Rico.

June 20, 2007.

Roberto E. Ruiz–Comas, Gonzalez Villamil Law Office, San Juan, PR, for Plaintiff.

Idza Diaz–Rivera, P.R. Department of Justice–Federal Litigation, Leslie Yvette Flores–Rodriguez, McConnell Valdes, San Juan, PR, for Defendants.

## MEMORANDUM AND ORDER

BESOSA, District Judge.

 A district court may refer pending dispositive motions to a Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b); Loc. Rule 72(a). Any party adversely affected by the report and recommendation may file written objections within ten days of being served with the Magistrate Judge's report. *See* 28 U.S.C. § 636(b)(1). A party that files a timely objection is entitled to a *de novo* determination of "those portions of the report or specified proposed findings or recommendations to which specific objection is made." *Sylva v. Culebra Dive Shop,* 389 F.Supp.2d 189, 191–92 (D.P.R.2005) (*citing United States v. Raddatz,* 447 U.S. 667, 673, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980)). Failure to comply with this rule precludes further review. *See Davet v. Maccarone,* 973 F.2d 22, 30–31 (1st Cir.1992). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." 28 U.S.C. § 636(a)(b)(1). *Templeman v. Chris Craft Corp.,* 770 F.2d 245, 247 (1st Cir.1985); *Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.,* 286 F.Supp.2d 144, 146 (D.P.R.2003). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. *See Hernandez–Mejias v. General Elec.,* 428 F.Supp.2d 4, 6 (D.P.R. 2005) (*citing LaCedra v. Donald W. Wyatt Detention Facility,* 334 F.Supp.2d 114, 125–126 (D.R.I.2004)).

On June 4, 2007, the United States Magistrate Judge filed two Reports and Recommendations ("R & R's") in this case, recommending that Defendant the Court Administration Office of the Commonwealth of Puerto Rico's ("OCA") Motion to Dismiss and Memorandum of Law (Docket No. 10) be granted and that defendants the Commonwealth of Puerto Rico's, the Department of Justice of the Commonwealth of Puerto Rico's, Hon. Roberto Sanchez–Ramos' and Candida Gutierrez–Pagan's ("Defendants") Motion for Judgment on the Pleadings (Docket No. 19) be granted in part and denied in part. (Dock-

et Nos. 27–28) No objections to the R & R's have been filed.

The undersigned, however, has made an independent examination of the record in this case and **ADOPTS** the magistrate judge's findings and recommendations as the opinion of the Court.

Accordingly, OCA's Motion to Dismiss (Docket No. 10) is hereby **GRANTED.** Plaintiff's claims against the OCA are hereby **DISMISSED WITH PREJU-DICE.**

Defendants' Motion for Judgment on the Pleadings (Docket No. 19) is hereby **GRANTED IN PART AND DENIED IN PART.** Plaintiff's claims against defendants the Commonwealth of Puerto Rico, the Department of Justice of the Commonwealth of Puerto Rico, the Hon. Roberto Sanchez Ramos, both in his personal and official capacity; and Candida Gutierrez–Pagan, **in her official capacity,** are hereby **DISMISSED WITH PREJUDICE.**

Defendant Gutierrez–Pagan's Motion for Judgment on the Pleadings **in her individual capacity** is hereby **DENIED.** Partial Judgment shall enter accordingly.

**IT IS SO ORDERED.**

## REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

## INTRODUCTION

Plaintiff José G. Cruz (hereinafter "Cruz") filed this action seeking damages against above-captioned co-defendants and in particular the Court Administration Office of the Commonwealth of Puerto Rico (hereinafter "OCA"), seeking declaratory judgment and damages pursuant to Title 42, *United States Code,* Section 1983. Plaintiff Cruz is seeking redress for alleged defendants' violations of plaintiff's civil and constitutional rights under color

of state law by depriving him of his liberty and due process of law. *Complaint ¶ 1.*

Co-defendant OCA filed a Motion to Dismiss plaintiff's cause of action under the Eleventh Amendment, which is considered unopposed. (Docket No. 10).

The Motion to Dismiss herein and the defendants' motion for Judgment on the Pleadings (which is to be considered by a separate report and recommendation) were referred to this Magistrate Judge for report and recommendation. (Docket Nos. 25, 26).

## BACKGROUND

On December 5, 2005, plaintiff Cruz filed a Complaint against OCA and other code-fendants requesting compensatory and injunctive relief for violations of his constitutional rights under the Civil Rights Act, section 1983, the First and Fourteenth Amendments of the Constitution of the United States. Plaintiff Cruz claims co-defendants participated in the issuance and execution of an unlawful warrant of arrest and incarcerated plaintiff despite having been previously served with a notice of appeal which would have automatically stayed any procedure to execute a sentence he had received to pay $2,000.00, penalty for a conviction of violating the Governmental Code of Ethics of Puerto Rico. The sentence was entered on December 6, 2004, in a criminal case by the People of Puerto Rico against therein defendant, and herein plaintiff Cruz, Case No. KLE 2002G00685, in the Superior Court of Puerto Rico.

The federal complaint submits co-defendant OCA held an established procedure to serve a warrant of arrest, and upon no serious and comprehensive investigation being conducted, plaintiff Cruz was illegally arrested and detained in violation of his constitutional rights to liberty. OCA is

charged with acting under color of state law and the custom, policies uses and/or practices. *Complaint ¶¶ 23–24.*

OCA filed a motion to dismiss and memorandum of law, which plaintiff Cruz has failed to oppose in any manner whatsoever, stating it is an arm of the Commonwealth of Puerto Rico and under the Eleventh Amendment all claims filed by plaintiff Cruz are to be dismissed.

## MOTION TO DISMISS STANDARD

■ Under Rule 12 of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted. Still, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see Miranda v. Ponce Fed. Bank,* 948 F.2d 41 (1st Cir.1991).

■ The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." *Aulson v. Blanchard,* 83 F.3d 1, 3 (1st Cir.1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Romero–Barceló v. Hernández–Agosto,* 75 F.3d 23, 28 n. 2 (1st Cir.1996) (*quoting Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). The Court, need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss. *Abbott, III v. United States,* 144 F.3d 1, 2 (1st Cir.1998) (*citing Shaw v. Digital Equip. Corp.,* 82 F.3d 1194, 1216 (1st Cir.1996)).

■ Indeed, a "complaint sufficiently raises a claim even if it points to no legal theory or even if it points to the wrong legal theory as a basis for that claim, as long as relief is possible under any set of facts that could be established consistent with the allegations." *González–Pérez v. Hospital Interamericano De Medicina Avanzada,* 355 F.3d 1, 5 (1st Cir.2004).

## ANALYSIS

### A. Eleventh Amendment Immunity.

The Eleventh Amendment proscribes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." 1 U.S.C. Const. Amend. XI.

■ The Eleventh Amendment bars suits from being brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to being sued. The Eleventh Amendment has also been interpreted to bar suits for monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506, 516 (1st Cir.1987).

■ The Commonwealth of Puerto Rico is considered a state for purposes of the Eleventh Amendment. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *De León López v. Corporación Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991); *Puerto Rico Ports Auth. v. M/V Manhattan Prince,* 897 F.2d 1, 9 (1st Cir.1990).

Over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. *See, e.g., Negrón Gaztambide v. Hernández Torres,* 145 F.3d 410 (1st Cir.1998); *Metcalf,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *Aviles–Martínez v. Monroig,* 963 F.2d 2, 8 (1st Cir.1992); *De León López,* 931 F.2d 116, 121 (1st Cir.1991); *Culebras,* 813 F.2d at 516; *Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034 (1st Cir.1987); *Fernández v. Chardón,* 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); *Ezratty v. Com. of Puerto Rico,* 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); *Litton Indus., Inc. v. Colón,* 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

 Eleventh Amendment immunity does not solely protect the State. Since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. *Ainsworth Aristocrat,* 818 F.2d at 1036; *see Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Sánchez–López v. Fuentes Pujols,* 247 F.Supp.2d 37 (D.Puerto Rico 2002).

 "The [Supreme] Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky,* 473 U.S. at 169, 105 S.Ct. 3099. The test for finding that a state has waived its Eleventh Amendment immunity is a stringent one. *Acevedo López v. Police Dept. of Com. of Puerto Rico,* 247 F.3d 26, 28 (1st Cir.2001); *see Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 241, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). A state's consent to suit in the federal courts must be "unequivocally expressed." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). It must be "stated by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction." *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Furthermore, "in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the state's intention to subject itself to suit in federal court." *Atascadero,* 473 U.S. at 241, 105 S.Ct. 3142; *Acevedo López,* 247 F.2d at 28.

 Whether a local entity, or public official, " 'is to be treated as an arm of the state partaking of the State Eleventh Amendment Immunity, or is instead to be treated as a municipal corporation or other political subdivision to which the Eleventh Amendment does not extend ... depends, at least in part, upon the nature of the entity created by state law.' " *Culebras,* 813 F.2d at 516–17. It has been held that the factors to consider are: (1) whether it performs a governmental function, (2) to what extent it is financed independently of the state treasury, (3) whether it functions with substantial autonomy, (4) and if a judgment sought to be entered against the agency will be satisfied out of the state treasury. *Id.* at 517; *Buck v. Puerto Rico Symphony Orchestra Corp.,* 849 F.Supp. 141, 144 (D.Puerto Rico 1994); *Suárez Cestero v. Pagán Rosa,* 996 F.Supp. 133, 142 (D.Puerto Rico 1998).

■ There are exceptions to the Eleventh Amendment protection. Said defense does not apply in four (4) circumstances: a state may consent to be sued in federal forum; a state may waive its own immunity by statute or the like; Congress may abrogate state immunity; or, if circumstances allow, other constitutional imperatives may take precedence over the Eleventh Amendment's bar. *See Metcalf,* 991 F.2d at 938; *Bernier–Aponte v. Izquierdo Encarnación,* 196 F.Supp.2d 93, 98 (D.Puerto Rico 2002).

■ Notwithstanding the above discussed, Congress amended the Civil Rights Act of 1964 in 1972 to include public employees, allowing for the prosecution of private rights of action against States that practiced discrimination, but limited to equitable remedies. Congress added relief for compensatory damages in 1991. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1072 (1991) (codified in 42 U.S.C. § 1981a(a)(1)). Thus, Congress has expressly waived the immunity of the State insofar as cases under Title VII where a state government is sued for certain actions of employment discrimination. *Espinal Domínguez v. Commonwealth of Puerto Rico,* 352 F.3d 490 (1st Cir.2003). *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (*concluding* that Title VII's authorization of federal-court jurisdiction to award money damages against a state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment since Congress was exercising its § 5 remedial powers). It follows that the substantive provisions of the Fourteenth Amendment themselves offer a powerful reason to provide a federal forum. *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 279, 117 S.Ct. 2028, 2039, 138 L.Ed.2d 438 (1997). *See also Espinal Domínguez,* 352 F.3d at 490 (discussing aspects of Title VII and the Eleventh Amendment as to the Commonwealth of Puerto Rico).

■ Whether an entity is arm of the state entitled to Eleventh Amendment immunity requires two-step analysis that looks at how entity is structured and vulnerability of state's purse. One must then look first at whether state has structured the entity to share its sovereignty, but if structural indicators point in different directions, then, at second step of analysis, vulnerability of state's purse is the most salient factor; where it is clear that state treasury is not at risk, then control exercised by the state over the entity does not entitle the entity to Eleventh Amendment immunity. *See Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.,* 322 F.3d 56 (1st Cir.2003). The inquiry into vulnerability of state's purse, for purpose of determining whether entity is arm of the state entitled to state's Eleventh Amendment immunity, includes examination of, among other, factors: whether the state laws impose an obligation on the state to be responsible for payment of judgments against the entity; other sources of revenue for the entity; and whether the agency is so structured that, as a practical matter, the state anticipated budget shortfalls that would render the entity constantly dependent on the state.

■ Additionally, when the state has not made it clear through structure that an entity is to share its immunity, there is reason not to reach a result inconsistent with what the state has apparently hoped to effectuate (that is, an independent entity) unless there is a risk to the state fisc. *Fresenius,* 322 F.3d at 67.

### B. Office of Court Administration is an Arm of the State.

■ As co-defendant OCA submits, the Constitution of the Commonwealth of

Puerto Rico bestows upon the Chief Justice of the Puerto Rico Supreme Court the power to administer the judicial system and provides for the appointment of an administrative director to assist in such functions. *Comm. P.R. Const. Art. V, § 7.* OCA was established by law as the administrative instrumentality of the General Court of Justice of Puerto Rico. *4 L.P.R.A. § 331.* Its enabling act provides that it "shall be under the direction of an Administrative Director who shall be appointed by the Chief of the Supreme Court and who shall hold office at the will of the Chief Justice". *Id.* The function of OCA is "to assist the Chief Justice in the administration of the General Court of Justice of Puerto Rico". *4 L.P.R.A. § 333.* The Puerto Rico Supreme Court approves any and all rules for the administration of the General Court of Justice, and consequently of OCA, as part of its constitutionally delegated power. *Const. Art. V, § 7.* Those rules are "subject to the laws concerning procurement, personnel, audit and appropriation of funds, and other laws which apply generally to all branches of government". *Id.* OCA relies on the funds appropriated by law in order to operate and the Judicial Branch of the Commonwealth of Puerto Rico receives an appropriation equal to a percentage of the average of the total amount of the annual revenues covered into the General Fund of the Treasury of the Commonwealth of Puerto Rico in the two (2) preceding fiscal years. *23 L.P.R.A. § 104(a)(7).*

As such, co-defendant OCA avers in its request for dismissal that since it relies on those sums appropriated by law in order to operate, it has no funding power to enable it to satisfy judgments without direct state participation or guarantees. OCA is not separately incorporated but is an integral part or an arm of the Puerto Rico Supreme Court, which in turn is an arm of the Commonwealth of Puerto Rico. *See*

*Velázquez Feliciano v. Tribunal Supremo de Puerto Rico,* (*holding* there is no controversy the Supreme Court is an arm of the Commonwealth of Puerto Rico and any judgment against the Supreme Court would have to be satisfied from Puerto Rico's coffers). Additionally, OCA's property is property of the General Court of Justice and, as such, not subject to Commonwealth taxation and the government of Puerto Rico has not immunized itself from responsibility for OCA's acts or omissions

Thus, examining the degree of dependence OCA has in the Commonwealth of Puerto Rico, and in the absence of any opposition by plaintiff Cruz, this Magistrate Judge finds OCA is entitled to Eleventh Amendment protection. Accordingly, all claims as to co-defendant OCA should be barred by its immunity.

Consequently, it is recommended that co-defendant OCA's Motion to Dismiss of plaintiff's claims for monetary damages under § 1983 be GRANTED.

### CONCLUSION

In view of the foregoing, it is recommended that OCA's Motion to Dismiss all of plaintiff's claims for monetary damages under § 1983 OCA be GRANTED (Docket No. 10).

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir. 1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and

weave at the initial hearing, and save its knockout punch for the second round").

## REPORT AND RECOMMENDATION

### INTRODUCTION

Plaintiff José G. Cruz (hereinafter "Cruz") filed this action seeking damages against above-captioned co-defendants and in particular co-defendants the Commonwealth of Puerto Rico, Department of Justice, Hon. Roberto Sánchez Ramos ("Sánchez Ramos"), as Secretary of Justice of the Commonwealth of Puerto Rico in his personal and official capacity, and Cándida Gutiérrez Pagán ("Gutiérrez Pagán"), as Assistant District Attorney for the Department of Justice of the Commonwealth of Puerto Rico, in her personal and official capacity. Plaintiff Cruz seeks declaratory judgment and damages pursuant to Title 42, *United States Code*, Section 1983 to obtain redress for alleged defendants' violations of plaintiff's civil and constitutional rights under color of state law by depriving him of his liberty and due process of law. *Complaint ¶ 1*.

Co-defendants the Commonwealth of Puerto Rico, Sánchez Ramos and Gutiérrez Pagán filed a Motion for Judgment on the Pleadings. (Docket No. 19). Plaintiff Cruz filed a response opposing same (Docket No. 24).

These motions were referred to this Magistrate Judge for report and recommendation. (Docket Nos. 25, 26).[1]

### BACKGROUND

On December 5, 2005, plaintiff Cruz filed a Complaint against all defendants requesting compensatory and injunctive relief for violations of his constitutional rights under the Civil Rights Act, Section 1983, the First and Fourteenth Amendments of the Constitution of the United States. Plaintiff Cruz claims defendants participated in the issuance and execution of an unlawful warrant of arrest and incarcerated him despite having been previously served with a notice of appeal which would have automatically stayed any procedure to execute a sentence he had received for payment of a $2,000.00 penalty for a conviction of having violated the Governmental Code of Ethics of Puerto Rico. The sentence was entered on December 6, 2004, in a criminal case by the People of Puerto Rico against herein plaintiff Cruz, therein defendant, Case No. KLE 2002G00685, in the Superior Court of Puerto Rico.

This federal claim submits co-defendants Sánchez Ramos, Gutiérrez Pagán and the Commonwealth of Puerto Rico, acting under color of state law, and upon no serious and comprehensive investigation conducted, illegally arrested and detained plaintiff Cruz in violation of his constitutional rights. *Complaint ¶¶ 1–21*.

Co-defendants Sánchez Ramos and Gutiérrez Pagán, without submitting to the jurisdiction of this court, filed a motion for judgment on the pleadings under Rule 12(c) of the Fed.R.Civ.P. claiming the allegations of the complaint as to the Commonwealth of Puerto Rico and as to co-defendants Sánchez Ramos and Gutiérrez Pagán, in their official capacity, are barred by Eleventh Amendment immunity. Additionally, co-defendants Sánchez Ramos and Gutiérrez Pagán aver that any action under Section 1983 should be dismissed because plaintiff Cruz has failed to raise a *prima facie* cause of action for which a relief may be granted.

1. This Magistrate Judge has ruled, by separate report and recommendation, as to the Office of Court Administration of the Commonwealth of Puerto Rico's Motion to Dismiss (Docket No. 10).

## STANDARD FOR MOTION FOR JUDGMENT ON THE PLEADINGS

When deciding a Motion for Judgment on the Pleadings, the standard appears under Federal Rule of Civil Procedure 12(c). The Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiffs' favor. Federal Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed but within such time as not to delay the trial." *Id.* Because such motion in the majority calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the non-movant and draw all reasonable inferences therefrom to the non-movant's behoof. *Rivera–Gómez v. de Castro,* 843 F.2d 631, 635 (1st Cir.1988); 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (3d ed.2004). The court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice. There is no resolution of contested facts in connection with a Rule 12(c) motion: a court may enter judgment on the pleadings only if the properly considered facts conclusively establish the movant's point. *Rivera–Gómez,* 843 F.2d at 635. *See R.G. Financial Corp. v. Vergara–Núñez,* 446 F.3d 178, 182 (1st Cir. 2006).

A motion for judgment on the pleadings and a motion to dismiss are ordinarily accorded much the same treatment. *See Collier v. City of Chicopee,* 158 F.3d 601, 602 (1st Cir.1998); *Lanigan v. Vill. of E. Hazel Crest,* 110 F.3d 467, 470 n. 2 (7th Cir.1997). One must view the facts contained in the pleadings in the light most flattering to the non-movants (herein the defendants) and draw all reasonable inferences therefrom in their favor. Like Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment. *Rivera–Gómez,* 843 F.2d at 635. There is, of course, a modest difference between Rule 12(c) and Rule 12(b)(6) motions. A Rule 12(c) motion, unlike a Rule 12(b)(6) motion, implicates the pleadings as a whole. *See Aponte–Torres v. University of Puerto Rico,* 445 F.3d 50, 54–55 (1st Cir.2006).

## ANALYSIS

### A. Eleventh Amendment Immunity.

Co-defendants the Commonwealth of Puerto Rico, Sánchez Ramos and Gutiérrez Pagán submit they are entitled to dismissal of plaintiff Cruz' claims in their official capacities, for being barred by the Eleventh Amendment.

The Eleventh Amendment proscribes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." 1 U.S.C. Const. Amend. XI.

The Eleventh Amendment bars suits from being brought in federal courts for monetary damages against states, unless the state being sued waives its immunity or consents to being sued. The Eleventh Amendment has also been interpreted to bar suits for monetary relief against the agencies or instrumentalities of a state and against its officers in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *Culebras Enterprises Corp. v. Rivera Ríos,* 813 F.2d 506, 516 (1st Cir.1987).

Eleventh Amendment immunity does not solely protect the State. Rather, since a State only exists through its instrumentalities, Eleventh Amendment immunity also extends to arms or "alter egos" of the State. *Ainsworth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of Puerto Rico,* 818 F.2d 1034, 1036 (1st Cir.1987); *see Mount Healthy City School Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Sánchez–López v. Fuentes Pujols,* 247 F.Supp.2d 37 (D.Puerto Rico 2002).

Notwithstanding the above discussed, Congress amended the Civil Rights Act of 1964 in 1972 to include public employees, allowing for the prosecution of private rights of action against States that practiced discrimination, but limited to equitable remedies. Congress added relief for compensatory damages in 1991. *See* Civil Rights Act of 1991, Pub.L. No. 102–166, 105 Stat. 1071, 1072 (1991) (*codified* in 42 U.S.C. § 1981a(a)(1)). Thus, in a similar vein it has been found that Congress has expressly waived the immunity of the State insofar as cases under Title VII where a state government is sued for certain actions of employment discrimination. *Espinal–Domínguez v. Commonwealth of Puerto Rico,* 352 F.3d 490 (1st Cir.2003). *See Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (*concluding* that Title VII's authorization of federal-court jurisdiction to award money damages against a state government to individuals subjected to employment discrimination does not violate the Eleventh Amendment since Congress was exercising its § 5 remedial powers). It then follows that the substantive provisions of the Fourteenth Amendment themselves offer a powerful reason to provide a federal forum. *Idaho v. Coeur d'Alene Tribe of*

*Idaho,* 521 U.S. 261, 279, 117 S.Ct. 2028, 2039, 138 L.Ed.2d 438 (1997).[2]

### 1. Commonwealth of Puerto Rico's Sovereign Immunity.

The Commonwealth of Puerto Rico is considered a state for purposes of the Eleventh Amendment. *Metcalf & Eddy, Inc. v. Puerto Rico Aqueduct & Sewer Authority,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *De León López v. Corporación Insular de Seguros,* 931 F.2d 116, 121 (1st Cir.1991); *Puerto Rico Ports Auth. v. M/V Manhattan Prince,* 897 F.2d 1, 9 (1st Cir. 1990).

Over the last two decades, the First Circuit consistently has held that Puerto Rico is considered a "State" for Eleventh Amendment purposes, and therefore Eleventh Amendment applies with full force to the Commonwealth of Puerto Rico. *See, e.g., Negrón Gaztambide v. Hernández Torres,* 145 F.3d 410 (1st Cir.1998); *Metcalf,* 991 F.2d 935, 939 n. 3 (1st Cir.1993); *Aviles–Martínez v. Monroig,* 963 F.2d 2, 8 (1st Cir.1992); *De León López,* 931 F.2d 116, 121 (1st Cir.1991); *Culebras,* 813 F.2d at 516; *Ainsworth Aristocrat Int'l Pty., Ltd. v. Tourism Co. of P.R.,* 818 F.2d 1034 (1st Cir.1987); *Fernández v. Chardón,* 681 F.2d 42, 59 n. 13 (1st Cir.1982) (Puerto Rico enjoys the full benefits of the Eleventh Amendment); *Ezratty v. Com. of Puerto Rico,* 648 F.2d 770, 776 n. 7 (1st Cir.1981) ("The principles of the Eleventh Amendment, which protect a state from suit without its consent, are fully applicable to the Commonwealth of Puerto Rico."); *Litton Indus., Inc. v. Colón,* 587 F.2d 70 (1st Cir.1978) (action against Puerto Rico barred by Eleventh Amendment, unless immunity is expressly abrogated by Congress acting under the Fourteenth Amendment).

**2.** *See Espinal–Domínguez,* 352 F.3d at 490 (discussing aspects of Title VII and the Eleventh Amendment as to the Commonwealth of Puerto Rico).

■ Additionally, insofar as civil rights claims, regardless of whether Puerto Rico's sovereign immunity is constitutional or common-law in nature, Congress did not abrogate that immunity when it granted federal district court sitting in Puerto Rico jurisdiction to enforce provisions of § 1983 on basis equal to that conferred on district courts in the states.

■ Furthermore, the Department of Justice of the Commonwealth of Puerto Rico, as an executive department of the government of Puerto Rico lacking an independent juridical personality, is generally sheltered by Puerto Rico's immunity from federal suit. *See Maysonet–Robles v. Cabrero,* 323 F.3d 43 (1st Cir.2003).

■ Thus, the Commonwealth of Puerto Rico and the Department of Justice of the Commonwealth of Puerto Rico, included as co-defendants in this federal claim and absent any possible controversy, would be entitled to sovereign immunity, which has not been waived. As such, judgment on the pleadings is to be GRANTED as to the Commonwealth of Puerto Rico and the Department of Justice of the Commonwealth of Puerto Rico.

### 2. Co-defendants Sánchez Ramos' and Gutiérrez Pagán's Immunity.

■ The Eleventh Amendment bars suits against the Commonwealth of Puerto Rico, its instrumentalities and agencies, and against state officials acting in an official capacity. Codefendants Sánchez Ramos and Gutiérrez Pagán have requested immunity in their official capacity as state agents. *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

■ There is no heightened pleading standard in civil rights cases. *See Educadores Puertorriqueños en Acción v. Hernández,* 367 F.3d 61, 66–67 (1st Cir. 2004). A district court considering a Rule 12(b)(6) motion must view the plaintiff's complaint through the prism of Fed. R.Civ.P. 8(a)(2)'s notice pleading requirements. *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 5 (1st Cir.2005). "A complaint satisfies that standard if it contains 'a short and plain statement of the claim showing that the pleader is entitled to relief,' and 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.' " *Id., see also Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

■ Regarding co-defendant Sánchez Ramos, under the rational of notice pleading requirements, same may be considered minimal—but "minimal requirements are not tantamount to nonexistent requirements." *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988). Even within the generous confines of notice pleading, courts must continue to "eschew ... reliance on bald assertions [and] unsupportable conclusions." *Chongris v. Bd. of Appeals,* 811 F.2d 36, 37 (1st Cir.1987).

Bearing this in mind, there seems no need to delve further as to entitlement to immunity as to co-defendant Sánchez Ramos since, as will be discussed herein below, there is no cause of action and no *prima facie* civil rights violation attributable to this co-defendant in his personal nor his official capacity. Accordingly, claims against Sánchez Ramos in his personal and official capacity should be subject of judgment on the pleadings.

■ As to co-defendant Gutiérrez Pagán, who is alleged to have acted under state law pursuant to the authority and power of her position as a state district attorney, the Eleventh Amendment would not shield a civil rights claim that entails personal liability. Still, no injunctive relief has been claimed or available as to this

defendant,[3] for which any claim in her official capacity would become a monetary claim against the Commonwealth of Puerto Rico and is sanctioned by Eleventh Amendment or when drawn with a more fine painted brush, a determination that Section 1983 claims are only against "persons acting under color of state law". *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102–03, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). *See also Nereida–González v. Tirado–Delgado,* 990 F.2d 701, 705 (1st Cir.1993) ("An official capacity suit is, in reality, a suit against the governmental entity, not against the governmental actor.").[4]

Considering the above discussion, claims against co-defendant Gutiérrez Pagán in her official capacity should be subject of judgment on the pleadings as requested.

## B. Failure to Present a *Prima Facie* Civil Rights Claim.

Co-defendants Sánchez Ramos and Gutiérrez Pagán also submit dismissal is warranted for plaintiff Cruz has failed to present sufficient facts to support a cause of action for civil rights violations as to these co-defendants and the existence of a causal connection between the acts alleged to have been committed by these co-defendants and the damages claimed by plaintiff.

The complaint submits plaintiff Cruz was arrested upon orders of Hon. Bárbara M. Sanfiorenzo when co-defendant Gutiér-

rez Pagán failed to notify the state judge plaintiff Cruz had filed an appeal to his conviction and sentence which resulted in a stay all proceedings to execute the $2,000.00 penalty imposed by the state sentence. However, the state judge was already aware of plaintiff Cruz' appeal, for which it has been argued that notice of the filing of an appeal would have made no difference.

### 1. Co-defendant Sánchez Ramos.

Plaintiff has not raised in the complaint any direct participation in the events by codefendant Sánchez Ramos. No personal involvement is claimed as to co-defendant Sánchez Ramos. *Complaint* ¶¶ 5–7. He is being sued in his personal and official capacity as the Secretary of Justice of the Commonwealth of Puerto Rico.

In cases where plaintiff alleges that a supervisor's conduct caused a constitutional deprivation, the Supreme Court has firmly rejected *respondeat superior* as a basis for § 1983 liability of supervisory officials. *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985); *Monell v. Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It has been established that § 1983 "should not be constructed to include vicarious liability, which is based on considerations of public policy, rather than fault or causation." *Id.*

Thus, it is firmly settled law that liability under section 1983 cannot be pred-

---

3. Eleventh Amendment immunity does not bar prospective injunctive relief against official-capacity defendants. *Redondo–Borges v. U.S. Dept. of Housing,* 421 F.3d 1 (1st Cir. 2005).

4. Defendants may be correct that money damages are unavailable against the Commonwealth in this action (and, therefore, against the individual defendants in their official capacities), but not necessarily for Eleventh Amendment reasons. The shortest, most di-

rect route to that result evolves out of the fact that neither a State nor its officers in their representative capacities are "persons" within the meaning of 42 U.S.C. § 1983 with respect to actions for damages. *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45, (1989); *Johnson v. Rodriguez,* 943 F.2d 104, 108 (1st Cir.1991); *see also Rosario–Urdaz v. Rivera–Hernandez,* 350 F.3d 219 (1st Cir.2003).

icated upon a theory of *respondeat superior*. *See Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir.1989). The requirement of direct participation is essential to a claim under § 1983.

▇▇▇ As such, a supervisor must be found liable for his/her own acts or omissions. *Maldonado–Denis v. Castillo–Rodríguez*, 23 F.3d 576, 582 (1st Cir.1994); *Gutiérrez–Rodríguez*, 882 F.2d at 562; *Figueroa v. Aponte-Roque*, 864 F.2d 947, 953 (1st Cir.1989). Liability is imposed if there is a showing that the "supervisor's conduct or inaction amounted to a reckless or callous indifference to the constitutional rights of others." *Barreto–Rivera v. Medina–Vargas*, 168 F.3d 42, 48 (1st Cir.1999) (*quoting Gutierrez–Rodríguez*, 882 F.2d at 562). Actual knowledge of the offending behavior is not required, only that the supervisor "would have known of it but for his deliberate indifference or willful blindness." *Camilo–Robles v. Hoyos*, 151 F.3d 1, 7 (1st Cir.1998) (*quoting Maldonado–Denis*, 23 F.3d at 582). If such showing is made, then the supervisor is responsible for the foreseeable consequences of such conduct if he had the power and authority to alleviate it. *Id.* The conduct or inaction of the supervisor must constitute a reckless or callous indifference to the constitutional rights of others. *Barreto–Rivera*, 168 F.3d at 48. If the supervisor's behavior demonstrates deliberate indifference to conduct that is itself violative of a plaintiff's constitutional rights, he or she may be held liable for what he or she does or fails to do. *Maldonado–Denis*, 23 F.3d at 582; *Santiago Irizarry v. Maldonado Aponte*, 296 F.Supp.2d 146, 151 (D.Puerto Rico 2003).

▇▇▇ There must also be an " 'affirmative link' between the street-level misconduct and the action, or inaction, of any supervisory officials." *Gutiérrez–Rodríguez*, 882 F.2d at 562 (*quoting Woodley v. Town of Nantucket*, 645 F.Supp. 1365, 1372 (D.Mass.1986)) (*quoting Rizzo v. Goode*, 423 U.S. 362, 371, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976)). *González Pérez v. Gómez Aguila*, 312 F.Supp.2d 161, 166 (D.Puerto Rico 2004).

▇▇▇ This causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights; for example, a sufficient causal nexus may be found if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct. Consequently, deliberate indifference to violations of constitutional rights can forge the necessary linkage between the acts or omissions of supervisory personnel and the misconduct of their subordinates. *Maldonado–Denis*, 23 F.3d at 582.

▇▇▇ Under Section 1983, absent participation in the challenged conduct, a supervisor can be held liable only if (1) the behavior of his subordinates results in a constitutional violation and (2) the supervisor's action or inaction was affirmatively linked to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence of the supervisor amounting to deliberate indifference. *See Bisbal–Ramos v. City of Mayaguez*, 467 F.3d 16 (1st Cir.2006); *Whitfield v. Melendez–Rivera*, 431 F.3d 1 (1st Cir.2005).

▇▇▇ Plaintiff Cruz claims co-defendant Sánchez Ramos, being the Secretary of Justice of the Commonwealth of Puerto Rico, allowed and participated in the execution of the unlawful warrant to arrest and incarcerate him despite the Department of Justice having been served with the notice of appeal which would automatically stay any procedure to execute the sentence imposed upon him and withheld from the state judge having received copy

of plaintiff's appeal. *Complaint* ¶¶ 7, 11. However, at the time of plaintiff's arrest, pursuant to a warrant of arrest issued by state judge Bárbara Sanfiorenzo, the agents were in contact solely with the state prosecutor Gutiérrez Pagán. *Id.* ¶¶ 13, 15–16. Plaintiff Cruz states no action or inaction by the Secretary of Justice, in either his official or personal capacity,[5] to establish a causal link between the events which caused his arrest and detention, notwithstanding the appeal, and the damages claimed and co-defendant Sánchez Ramos.[6]

In light of the above discussed, the complaint fails to present a *prima facie* cause of action as to co-defendant Sánchez Ramos, for which it is recommended that judgment on the pleadings be GRANTED as to co-defendant Sánchez–Ramos in his personal and official capacity.

## 2. Co-defendant Gutiérrez Pagán.

### a) Gutiérrez Pagán's Personal Capacity.

■ Contrary to above discussed as to co-defendant Sánchez Ramos, plaintiff Cruz claims in the federal complaint and attachments thereto that co-defendant Gutiérrez Pagán, the state district attorney, had a personal and direct involvement in the events leading to his arrest and incarceration. Plaintiff submits co-defendant Gutiérrez Pagán was notified on January 4, 2005, with copy of the notice of appeal with the seal of the Appellate Court, by certified mail, return receipt requested. Copy was also served the same day to the Puerto Rico District Attorneys' Office, San Juan, Puerto Rico. *Complaint* ¶ 4, *Exhibit*

*II*. It is also alleged, codefendant Gutiérrez Pagán proactively promoted the unlawful arrest and was informed by the special agents and police officers from the headquarters of the Police Department of the details of plaintiff's arrest on January 21, 2005. *Complaint* ¶ 12. At the time plaintiff Cruz was arrested, he provided a copy of the sealed appealed order to the arresting officer, who thereafter consulted by telephone with co-defendant Gutiérrez Pagán and indicated having instructions from said co-defendant to arrest plaintiff. *Id.* ¶ 13. During his detention at the Police Headquarters, the agents were in communication with co-defendant Gutiérrez Pagán and plaintiff Cruz' attorney. Co-defendant Gutiérrez Pagán wanted the agents to take plaintiff directly to jail, while counsel indicated he was to be taken to court since the Judge had already informed she would order the release of plaintiff Cruz. *Id.* ¶ 15. Upon conversations between co-defendant Gutiérrez Pagán and the arresting officer Roberto Benvenutti, plaintiff Cruz was jailed in the basement of the Superior Court in Hato Rey, Puerto Rico for more than seven hours until he was ordered released. *Id.* ¶ 16.

A perusal of the documents in record makes, at this stage of proceedings, allegations of damages and constitutional violations sufficient to meet the *prima facie* burden, as well as the causal connection between same and co-defendant Gutiérrez Pagán's actions. Therefore, it is recommended that judgment on the pleadings as to the cause of action against co-defendant

---

5. Plaintiff's response to defendants' motion for judgment on the pleadings acknowledges that as to the Attorney General (meaning the Secretary of Justice co-defendant Sánchez Ramos) the complaint does not aver specific knowledge and/or direct action by him in the course of the events that led to the plaintiff's unlawful incarceration and thus his constitutional violations. *Response* ¶ 21.

6. An affirmative link requirement contemplates proof that supervisor's conduct led inexorably to constitutional violation. *Hegarty v. Somerset County*, 53 F.3d 1367 (1st 1995).

Gutiérrez Pagán, in her personal capacity, be DENIED.

### b) Gutiérrez Pagán's Absolute Immunity.

Co-defendant Gutiérrez Pagán has also raised entitlement to absolute immunity for having acted as advocate in the performance of her official duties as state district attorney in handling plaintiff's Cruz case. The absolute immunity attributed to the judiciary and to grand jurors or witnesses is submitted when comparing the prosecutor's quasi-judiciary functions in the instant case.

■ Notwithstanding co-defendant Gutiérrez Pagán's averment as to absolute immunity, prosecutors are public officials and officers of the court and when giving legal advice to the police, they have only **qualified immunity**. *Burns v. Reed,* 500 U.S. 478, 496, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991) (*emphasis supplied* ). "[T]he absence of absolute immunity for the act of giving legal advice may cause prosecutors to consider their advice more carefully...." *Id.* at 495, 111 S.Ct. 1934, 500 U.S. 478, 111 S.Ct. 1934, 114 L.Ed.2d 547. The arguments of absolute immunity raised in *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and, as submitted by co-defendant Gutiérrez Pagán, entail issues considering the quasi-judicial actions of a prosecutor for unlawful prosecution charges. In *Imbler,* state prosecuting attorney who acted within the scope of his duties in initiating and pursuing criminal prosecution and in presenting state's case was considered to enjoy absolute immunity from civil suit for damages. Subsequently in *Reed,* the Highest Court clarified there was no absolute immunity for a

state prosecutor in giving advice to the police.[7]

From plaintiff Cruz' submission in the complaint, including the accompanying exhibit, there is a discrepancy on whether the filing of the appeal, without the posting of bail on appeal, would stay all proceedings and execution of the sentence imposed by the state court. *Complaint, Exhibits 5, 6.* This issue may allow co-defendant Gutiérrez García to submit qualified immunity, which cannot be ascertained at this stage of proceedings nor has it been properly argued by defendants. As such, it is recommended that the judgment on the pleadings resting solely on absolute immunity as grounds for dismissal requested as to co-defendant Gutiérrez Pagán be DENIED.

### CONCLUSION

In view of the foregoing, it is recommended that the Motion for Judgment on the Pleadings **BE GRANTED IN PART AND DENIED IN PART** (Docket No. 19), as follows:

1) Judgment on the pleadings be GRANTED as to the Commonwealth of Puerto Rico and the Department of Justice of the Commonwealth of Puerto Rico;

2) Judgment on the pleadings be GRANTED as to co-defendant Hon. Roberto Sánchez Ramos in his personal and official capacity;

3) Judgment on the pleadings be GRANTED as to co-defendant Candida Gutiérrez Pagán in her official capacity;

---

**7.** In *Burns v. Reed* the Highest Court found state prosecutor was absolutely immune from liability for damages under § 1983 for participating in probable cause hearing. However, state prosecutor was not entitled to absolute immunity for giving legal advice to police, there being no historical or common-law support for extending absolute immunity in such cases.

4) Judgment on the pleadings be DE-NIED as to co-defendant Candida Gutiérrez Pagán in her personal capacity.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir. 1986). *See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir.1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").